UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FRED N. and MICHANA A. WESTERFIELD, et al.,

    Plaintiffs,

  v.                                Case No. 06-C-1210

THE QUIZNOS FRANCHISE CO., LLC, et al.,

    Defendants.

---

**ORDER ON MOTIONS ARISING FROM DEFENDANTS' FAILURE TO RESPOND**

---

Plaintiffs claim they purchased from defendants several Quiznos Subs franchises after allegedly relying on misrepresentations from defendants regarding vendor rebates, operating costs, and marketing practices. Two of the defendants, Darin and Eric Tweten, were properly served, but failed to file a timely response to the complaint. As a result, a default was entered against each of them by the clerk pursuant to Fed. R. Civ. P. 55(a). A flurry of motions followed beginning with the Twetens' motion to vacate the defaults entered against them. In light of the circumstances giving rise to the Twetens' tardiness, and in light of the significant damages that might be awarded against them, defendants' motion to vacate entry of default will be granted, and plaintiffs' three motions—a motion for default judgment, a motion to strike the Twetens' supporting declarations and brief, and a motion to strike the Twetens' answer—will be denied. However, the court will impose a sanction on the Twetens (or, more appropriately, their insurer) for their failure to respond to the complaint in a timely fashion.

**BACKGROUND**

Again, the factual allegations in plaintiffs' complaint center on defendants' alleged misrepresentations to Quiznos Subs franchisees, but the procedural background is more germane to the instant motions. Plaintiffs properly served the Twetens with a summons and copy of the complaint on December 7, 2006, which gave the Twetens twenty days, or until December 27, 2006, to respond to the complaint. *See* Fed. R. Civ. P. 12(a). Plaintiffs failed to respond to the complaint by that date. Therefore, on January 8, 2007, plaintiffs applied to the clerk for entry of default against the Twetens and moved for a default judgment against them. The clerk entered default on January 9, 2007. On January 12, 2007, the Twetens filed a motion to vacate default judgment.[1] The Twetens filed the supporting declarations of Darin Tweten, Richard Kosh, William Powell, and Robert Jones on January 23, 2007, and on January 26, 2007, filed a brief in support of their motion to vacate default judgment. Plaintiffs moved the court to strike the supporting declarations and brief as untimely. On January 24, 2007, the Twetens filed their answer. Plaintiff's subsequently filed a motion to strike the Twetens' answer, again on grounds of unexcused untimeliness. In sum, then, four motions are before me: (1) plaintiffs' motion for default judgment; (2) plaintiff's motion to strike the declarations and brief that the Twetens submitted to support their motion to vacate "default judgment;" (3) plaintiffs' motion to strike the Twetens' answer; and (4) the Twetens' motion to vacate "default judgment," which the court will treat as a motion to vacate entry of default.

---

[1] The Twetens labeled and filed this motion as one "to vacate default judgment," even though no default judgment has been entered in the case. However, plaintiffs' response to the motion indicates that they understood it as a motion to vacate entry of default, which would have been the appropriate designation for the motion. (*See* Dkt. ##13, 26, 38.) The court will therefore treat the Twetens' motion as one to vacate entry of default.

The Twetens' failure to respond in timely fashion seems traceable to a mix-up at the office of their insurer, AIG Domestic Claims, Inc. ("AIG"), and to exigent circumstances that developed for Attorney John Schull, whom AIG eventually retained to represent the Twetens. Upon receipt of the summons and complaint, the Twetens notified their insurance broker, Peter Burke, and asked Burke to forward the complaint to AIG. On December 8, 2006, Burke informed Darin Tweten that he would forward the complaint to AIG and that AIG would retain defense counsel to represent both Twetens. During the following weeks, Darin Tweten e-mailed Burke several times to inquire as to when counsel would be retained. In response to each e-mail, Burke told the Twetens that AIG would timely retain defense counsel.

On December 18, 2006, Burke left a telephone message with William Powell of AIG, informing him of the lawsuit against the Twetens. Burke e-mailed a copy of the summons and complaint to Powell on December 20, 2006. Upon receipt of the complaint, Powell attempted to determine whether AIG provided insurance to the Twetens for the facts alleged in the complaint. Initially, there was significant confusion as to whether AIG had ever provided a policy to the Twetens, since their insurance policy was relatively new (bound on November 13, 2006) and was not yet entered into AIG's computer system. Powell confirmed that AIG had an effective policy providing coverage to the Twetens, and then forwarded the complaint to AIG's newly created c-Claim unit on December 22, 2006.

AIG's c-Claim unit apparently did not begin processing the claim until December 28, 2006. Ironically, AIG had created the c-Claim unit in December of 2006 to facilitate timely responses to new lawsuits. The complaint was forwarded to the c-Claim unit just days after its creation and during the heart of the holiday season. Defendants represent that the c-Claim department has

3

Case 1:06-cv-01210-WCG    Filed 02/16/07    Page 3 of 8    Document 54

processed over 2,000 lawsuits since December 20, 2006, and that this is the only claim that has fallen through the cracks in terms of timely retention of counsel. (Decl. of R. Jones ¶ 8.)

The c-Claim department reviewed the complaint and opened a claim file. The department returned the file to Powell on January 3, 2007, and Powell assigned a claims representative, Richard Kosh, to handle the claim. Kosh was out of his office January 8 and 9, 2007, to attend a multi-million-dollar mediation proceeding, but returned on January 10, 2007, and immediately began working on the claim. That same day, Darin Tweten called Kosh to inform him that default had been entered against the Twetens.

On January 11, 2007, Kosh retained Attorney John Schull of the Terwilliger Law firm to represent the Twetens. The next day Schull filed with this court a notice of appearance as well as the motion to vacate "default judgment." According to Schull's declaration, his tardiness is attributable to an unforeseen spike in his workload, his own illness, and some out-of-town legal work. He states that his firm lost an attorney in December of 2006, and that he was taking on some duties of a partner in his firm who recently underwent open-heart surgery.

**ANALYSIS**

**1. Motion to Strike Supporting Declarations and Brief**

I first address plaintiffs' expedited motion to strike the declarations and brief supporting the Twetens' motion to vacate entry of default. Plaintiffs point to the Twetens' failure to comply with Local Rule 7.1(a), which provides:

> Every motion must set forth the rule pursuant to which it is made and, except for those brought under Civil L.R. 7.4 (Expedited Non-Dispositive Motion Practice), must be accompanied by (1) a supporting brief and, when necessary, affidavits or other documents, or (2) a certificate of counsel stating that no brief or other

4

> supporting documents will be filed. If the movant fails to comply with either (1) or
> (2) above, the Court *may* deny the motion as a matter of course.

Civil L.R. 7.1(a) (emphasis added).

Plaintiffs urge the court to strike the supporting declarations and brief in light of the Twetens' unexplained failure to comply with the local rules and their failure to seek leave to file these documents. Defendants point to extenuating circumstances, described above. Plaintiffs have not contested any of Schull's statements in this matter, nor does the court find any basis for doubting them. I am satisfied that Schull has acted with reasonable diligence in the circumstances, and furthermore, I find that the late filings of the declarations and brief have not prejudiced the plaintiffs. Therefore, this motion will be denied.

**2. Motion to Vacate Entry of Default and Motion for Default Judgment**

Entry of default may be set aside under Rule 55(c) for "good cause." Fed. R. Civ. P. 55(c). Furthermore, the "good cause" to be shown is "good cause" for the judicial action, not "good cause" for the defendant's error. *Sims v. EGA Products, Inc.*, Nos. 06-1057 & 06-1268, 2007 WL 162843, at *3 (7th Cir. Jan. 24, 2007). The different standards applicable for relief from entry of default as opposed to relief from default judgment reveal that the former is less demanding.

> Rule 55(c) uses the "good cause" standard for relief before judgment, while referring to the standard under Rule 60(b) for relief after judgment. Rule 60(b) allows relief on account of mistake and inadvertence in addition to excusable neglect; the "good cause" standard in Rule 55(c) must be easier to satisfy.

*Id.* The fact that declining to vacate a default will result in the imposition of a judgment requiring a defendant to pay damages disproportionate to any wrong done by the defendant constitutes good cause for judicial action, even if there is no good excuse for the defendant's inattention to the case. *Id.* Finally, in the Seventh Circuit, a party moving to vacate an entry of default must show not only good cause for the judicial action, but also quick action to correct it and a meritorious defense to

5

the plaintiff's complaint. *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994) (*citing United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir. 1989)).

I find there is good cause for vacating the entry of default. Refusing to vacate the default will result in a sanction disproportionate to any harm caused by the delay. Moreover, the Twetens consistently relayed to AIG a sense of urgency, and AIG seems to have dropped the ball largely on account of switching over to a new method for handling claims. The plaintiffs have not been prejudiced by the Twetens' tardiness, and the court is not blind to the fact that the deadline occurred in the midst of the holiday season. Finally, courts have a clear preference for adjudication on the merits, especially where, as here, there is no evidence of prejudice to the party asserting untimeliness and the damages award against the defendants could be extremely high.

I find that the Twetens have met the other two requirements for vacating a default. They took quick action to correct their tardy response, filing a motion to vacate the default just a few days after it was entered. Within two weeks thereafter, they filed a supporting brief and declarations, as well as an answer to plaintiffs' complaint. Furthermore, they have presented a meritorious defense, as their answer raises eight plausible, affirmative defenses. (Answer at 8; Dkt. #24.)

Because I am granting defendants' motion to vacate entry of default, it should be clear that plaintiffs' motion for a default judgment will not be granted, for reasons already set forth. I add only as a comment that a default judgment is a sanction for misconduct in litigation, and every sanction should fit the offense. It is for this reason that "district judges should not enter defaults precipitately." *Sims*, 2007 WL 162843, at *4. Entry of default judgment against the Twetens in these circumstances, as adumbrated above, is not proper.

6

**3. Motion to Strike Answer**

When notice or the Federal Rules of Civil Procedure require a party to respond within a specified time, a court in its discretion may, upon a showing of cause, order enlarged the period within which a response is due (1) if the request therefor is made before the period originally prescribed expires, or (2) upon a motion made after the originally prescribed period expires if it finds "excusable neglect." *See* Fed. R. Civ. P. 6(b). That term "encompasses situations in which the failure to comply with a filing deadline is attributable to negligence" if the oversight is excusable. *Pioneer Investment Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 394 (1993).

The date by which the Twetens were required to respond to the complaint was December 27, 2006, and in the interim they have not explicitly requested a time extension through the filing of a motion. However, rather than strike the answer and allow the Twetens to file a motion for a time extension under Rule 6(b), thereby further delaying resolution of this motion, the court will construe their answer as implicitly containing a motion to file an answer. Their briefing on the matter will be taken from the arguments and facts presented in their already submitted briefs.

Of course, an extension of time to file an answer is implicit in the court's decision to vacate the entry of default. It makes no sense to vacate the default while denying the defendants to right to respond to the complaint. But to the extent an enlargement of time to file an answer may still be needed, and for the reasons already set forth, I find the Twetens' failure to answer in a timely fashion is excusable. An odd confluence of circumstances seems to have been at work here, involving mistakes and tardiness on the part of both AIG and Schull in the heart of the holiday season. However, the Twetens did file an answer within a month of the response deadline, and, again, plaintiffs have shown no prejudice to themselves.

Nevertheless, it is also true that if the Twetens, or their insurer, had acted in a timely fashion, the plaintiffs would have had no need to file these motions and respond to the Twetens' motion to vacate entry of default. Plaintiffs' counsel were forced to unnecessarily expend time and effort as a result of their inattention to the case. I will therefore award plaintiffs their actual attorneys fees, not to exceed $500, associated with filing their three motions and responding to the Twetens' motion. This will serve as a reasonable sanction for the defendants' failure to comply with the time limit for filing their answer and, at the same time, avoid imposing a sanction that would be far in excess of any harm resulting therefrom and grossly disproportionate to any culpability they may bear.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to strike the declarations of Darin Tweten, Richard Kosh, William Powell, and Robert Jones, as well as the brief supporting defendants' motion to vacate default judgment, is **DENIED**; defendants' motion to vacate entry of default is **GRANTED**; plaintiffs' motion for default judgment is **DENIED**; and plaintiffs' motion to strike the Twetens' answer is **DENIED**. Plaintiffs are awarded actual attorneys fees associated with filing their three motions and responding to the Twetens' motion to vacate, but this award of costs shall not exceed $500.

Dated this   15th   day of February, 2007.

   s/ William C. Griesbach
   William C. Griesbach
   United States District Judge