UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRED N. AND MICHANA A.
WESTERFIELD, ET AL.,

        Plaintiffs,

v.                                                                 Case No. 06-C-1210

THE QUIZNO'S FRANCHISE CO., LLC, ET AL.,

        Defendants.

**ORDER DENYING MOTION TO APPROVE NOTICE AND ORDER TO PROVIDE NOTICE**

    The gravamen of plaintiffs' class action complaint is that defendants made misrepresentations regarding vendor rebates, operating costs, and marketing practices, and that plaintiffs relied on those misrepresentations in purchasing from defendants several Quiznos Subs franchises in Wisconsin. The impetus behind plaintiffs' instant motion is their concern that Quiznos' actions are undermining the rights of potential class members. More specifically, plaintiffs worry that two release forms sent by Quiznos to franchisees might, if signed, compromise franchisees' rights as potential class members in the instant action, and that the forms fail to alert them to that possibility. Plaintiffs have therefore moved the court to approve a proposed notice to all persons who have signed a Quiznos franchisee agreement since January 1, 2000. Plaintiffs also request the court to order Quiznos to provide the names and addresses of all such persons, claiming that only Quiznos has a complete list of same. For the following reasons, plaintiffs' motion will be denied. However, in order to protect the rights of potential class members, the court will order Quiznos to provide notice as set forth below.

## BACKGROUND

Plaintiffs suspect that Quiznos is attempting to gut the prospective class, and as "proof" plaintiffs point to recent communications Quiznos has sent to some of its Wisconsin franchisees. These communications are of two types. First is a "Consent to Transfer" form sent to franchisees who wish to sell or transfer their Quiznos franchise. According to the record, Quiznos has recently sent this form to at least two Wisconsin franchisees who wished to transfer their franchise: William Harris and Allan G. Loeffler. (Decl. of Carri Bryan ¶ 3; Decl. of Allan G. Loeffler ¶¶ 2-3.) The transfer form contains a "Release of Franchisor" provision under which the franchisee agrees to release the franchisor

> and its affiliates, parents, subsidiaries, area directors and agents and their respective employees, officers, directors, successors, assigns, guarantors and other representatives (the "Released Parties"), from any and all claims, demands, obligations, actions, liabilities and damages of every kind or nature whatsoever, in law or in equity, whether known or unknown to them, which they may have against the Released Parties as of the date of this Agreement, or which may thereafter be discovered, accrued, or sustained, in connection with, as a result of, or in any way arising from, any relations or transactions with the Released Parties, however characterized or described, including but not limited to, any claims arising from the Seller Franchise Agreement, the Buyer Franchise Agreement or the Purchase Agreement or the transactions described herein.

(Decl. of Mark M. Leitner Ex. A at 6.)

The second communication that concerns plaintiffs is the release form sent to franchisees by CLG Leasing, LLC, which is a Quiznos-affiliated entity that administers leases for certain point-of-sale equipment (e.g., cash registers and credit card terminals) to franchisees. The CLG leasing letter advises that CLG wishes to terminate the lease, release the franchisee from any further payments, and provide the franchisee title to the point-of-sale system free and clear. In return, CLG requires the franchisee "(1) to expressly release CLG and its affiliates from all duties and obligations under the Lease; [and] (2) to expressly release CLG and its affiliates from any and all liability for all claims

2

and demands arising between You and CLG relating to the Lease . . . ." (Decl. of Mark M. Leitner Ex. C.) The record reflects that Quiznos has sent the CLG leasing letter to the Wisconsin franchisees—three in total—who have an active point-of-sale lease with CLG, and that no responses have been received as of March 29, 2007. (Decl. of J. Brandon Turner ¶ 7.) According to Quiznos, the CLG leasing letter was not targeted at Wisconsin franchisees, as it was sent to all franchisees who have an active point-of-sale lease with CLG. (*Id.* ¶¶ 4, 6.)

In their motion, plaintiffs do not attack the validity of the releases themselves; rather, they seek to "level the playing field" by ensuring that plaintiffs and potential class members who sign releases do so only after being informed of their rights. (Br. in Supp. of Mot. to Approve Notice at 3.) To this end, plaintiffs request the court to approve the content of their proposed notice, and to order Quiznos to provide the names and addresses of putative class members. In response, Quiznos argues that plaintiffs already have these names and addresses (or can easily obtain them), that the contested releases are legitimate exercises of its right to conduct business with its franchisees, and that the only purpose of the motion is to jaundice the court's view of the parties by suggesting that Quiznos is attempting to gut the prospective class.

## DISCUSSION

As the United States Supreme Court has noted, class actions serve an important function in our system of civil justice, and yet they also present opportunities for abuse. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100. The boundaries of a court's authority over the conduct of counsel and parties in a class action are limned in Rule 23 of the Federal Rules of Civil Procedure, which provides:

3

> In the conduct of actions to which this rule applies [i.e., class actions], the court may make appropriate orders: . . . (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors . . . . The orders . . . may be altered or amended as may be desirable from time to time.

Fed. R. Civ. P. 23(d).

In *Gulf Oil*, the Court held that Rule 23 permits a court, in appropriate circumstances, to restrict communications between a party and members of a class or putative class. *Gulf Oil*, 452 U.S. at 100-02. As to the restriction itself, the Court held that

> an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Id.* at 101-02. Although *Gulf Oil* concerned communications between counsel for the named plaintiff and potential class members, its rationale has been found to apply to communications between defendants and potential class members as well. *See, e.g., Bublitz v. E.I. DuPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 675 n.1 (N.D. Ga. 1999); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567, 2001 WL 1035132, at *6 (S.D.N.Y. Sept. 7, 2001). Furthermore, the holding of *Gulf Oil*, as well as a court's power to restrict communications between parties and potential class members, applies even before a class is certified. *See, e.g., Bublitz*, 196 F.R.D. 545; *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 242-43 (E.D. Tex. 1997); *Ralph Oldsmobile*, 2001 WL 1035132.

After examining the parties' briefs and supporting documents, and after considering the

4

parties' arguments presented at the April 5, 2007, motion hearing, I conclude there exists a potential for unknowing waivers resulting from a lack of information in the transfer agreement and CLG leasing letter, and a lack of clarity in the CLG leasing letter. Neither the transfer agreement nor the CLG leasing letter mentions the instant action. Nor does the record reflect any mention of this action in any other communications made to date by Quiznos. A risk exists, then, that franchisees might sign the releases without knowing the implications vis-à-vis rights they might assert in the instant action. The CLG leasing letter also suffers from a lack of clarity. It requires the franchisee to release CLG and its affiliates from liability for all claims and demands "relating to" the lease. It is not clear from the letter which entities would be considered affiliates of CLG. Furthermore, the rather vague "relating to" language could conceivably include claims a potential class member (or plaintiff) might wish to assert in this action. Again, a risk exists that franchisees might sign the release without knowing what they are releasing.

Balancing the findings supported by the record against the need to limit Quiznos' speech as little as possible in the circumstances, *see Gulf Oil*, 452 U.S. at 101-02, the appropriate remedy is to require that notice be given. The remedy proposed by plaintiffs, however, is too broad. As far as Wisconsin franchisees are concerned, the CLG leasing letters have been sent only to those three franchisees with an active CLG lease. There are no other Wisconsin franchisees to whom the CLG leasing letter might be sent. As for the transfer agreement, the record indicates that since the instant action was commenced, only two Wisconsin franchisees have received this form, and in both cases the form was sent in response to the franchisee's expressed interest in transferring his franchise. Both of these franchisees are obviously aware of this action, however, and have retained counsel, which suggests that plaintiffs' fears that franchisees may inadvertently relinquish their rights may be overblown. Nevertheless, given the danger that franchisees asked to sign releases submitted by

5

Quiznos and/or CLG may inadvertently relinquish whatever rights they may have in this action, Quiznos and its affiliates will be directed to provide notice of this lawsuit to any of its Wisconsin franchisees from whom it seeks a release of claims while this action is pending. The notice must alert the recipient (1) that presently pending before this court is an action by several Wisconsin franchisees against Quiznos that seeks class action status; (2) that signing the release may prevent the recipient from later joining this action if the class is certified; and (3) that the recipient may wish to consult with an attorney before signing the release. The notice must also provide the name of the instant action.

Since the two franchisees who have contacted Quiznos about transferring their franchise are already aware of this action and have consulted counsel, notice need not be sent to them. However, such notice should be sent to the three Wisconsin franchisees who received the offer to transfer title to point of sale equipment in return for a release of claims and any other Wisconsin franchisees to whom such an offer is extended while this action is pending.

**IT IS THEREFORE ORDERED** that plaintiff's motion for approval of notice to the putative class is **DENIED.**

**IT IS FURTHER ORDERED** that defendant Quiznos provide notice, as set forth above, to the three Wisconsin franchisees from whom it has sought releases under the CLG leasing letter, and to any Wisconsin franchisee from whom Quiznos requests a similar release while this action is pending.

Dated this 6th day of April, 2007.

    s/ William C. Griesbach
William C. Griesbach
United States District Judge