UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FRED and MICHANA WESTERFIELD, et al.,,

        Plaintiffs,

    v.                                                    Case No. 06-C-1210

THE QUIZNO'S FRANCHISE
COMPANY, LLC, et al.,

        Defendants.

---

**MEMORANDUM DECISION AND ORDER GRAITING
MOTION TO AMEND OR ALTER JUDGMENT**

---

On November 5, 2007, the court issued a Memorandum Decision and Order, and a separate judgment granting the defendants' Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim. Plaintiffs' civil RICO, fraud and anti-trust claims were dismissed on their merits with prejudice. Lacking direct jurisdiction over the remaining state law claims, the court exercised its discretion to dismiss those claims without prejudice to allow plaintiffs to pursue them in state court. Plaintiffs have now filed a motion to alter or amend judgment pursuant to Rule 59(e) in which they seek to resurrect their RICO and fraud claims on grounds of manifest error of law and fact, as well as newly discovered evidence. For the reasons that follow, plaintiffs' motion will be granted.

**BACKGROUND**

In my original decision and order dismissing the claims of fraud upon which plaintiffs' RICO claims were predicated, I concluded that the claims were fatally undermined by the express disclosures, disclaimers, and non-reliance clauses contained in both the Uniform Franchise Offering

Circular (UFOC) that each plaintiff had received and the Franchise Agreement that each had signed. (Dkt. 108, Mem. at 5.) I held that plaintiffs' claims that they reasonably relied on statements made to them by the Area Directors for Quiznos concerning the amount of income the franchises would likely generate were precluded by the large-type provisions in the UFOC and Franchise Agreement that expressly disclaimed such representations and the similarly highlighted clauses in which each plaintiff expressly acknowledged that they were not relying upon such representations. (*Id.* at 8-9.) Plaintiffs' additional claims that Quiznos had fraudulently failed to disclose the fact that Quiznos directly or indirectly benefitted from mark-ups on the supplies and services that franchisees were required to purchase were precluded, I held, by the fact that the UFOC plaintiffs received and the Franchise Agreement they signed expressly disclosed this exact fact. Both the UFOC and the Agreement expressly stated that Quiznos had the right to receive payments from suppliers from whom the franchisees were required to purchase the goods and supplies needed to operate the franchise. (*Id.* at 11-12.) While I acknowledged that the specific amount of the mark-up was not disclosed, I noted that the Agreement highlighted this fact and cautioned prospective franchisees that Quiznos was furnishing no information as to "actual or potential sales, earnings or profits." (*Id.* at 12 (quoting Ex. B at 53.)). Prospective franchisees were advised "to seek professional assistance, to have professionals review the documents and to consult with other franchisees regarding the risks associated with the purchase of the franchise." (*Id.* at 13 (quoting Ex. A, Disclosure Acknowledgment Statement.)) Finally, plaintiffs were furnished with a list of past and present Quiznos franchisees with addresses and telephone numbers. Given these disclosures, I held that plaintiffs' allegations were legally insufficient to state a claim for fraudulent omission.

In their present motion, plaintiffs assert three separate arguments that they claim individually

2

or in combination warrant reconsideration of the decision dismissing their complaint. They first claim that they acquired new evidence on the very day that this court issued its Decision and Order dismissing the case. This new evidence consists of documentation produced by Quiznos in another case which demonstrates that for at least three years, Quiznos had a written corporate policy instructing its field operatives that there was only one possible answer–"None"– to the question in the Acknowledgment form they were required to sign upon becoming a Quiznos franchisee as to whether they had received any information outside the disclosures contained in the UFOC. In confirmation of this new evidence, several individual plaintiffs have submitted declarations stating that they were instructed by the Quiznos' Area Director to write "none" in the space provided in the Acknowledgment form before signing it, even though they had relied on information outside of the UFOC in deciding to enter into the Franchise Agreement. (Dkt. 114, Decl. of Becky Manske ¶ 6.) This new evidence, plaintiffs argue, warrants reconsideration and modification of the court's decision.

Plaintiffs next claim that reconsideration is warranted because the court misapplied clear Wisconsin law in resolving the issue of whether the Franchise Agreement was unconscionable without sufficient evidence in the record to support its conclusion. Plaintiffs argue that under Wisconsin substantive law, the question of whether the steps leading to the formation of a contract were procedurally unconscionable presents a question of fact that cannot be resolved on the pleadings alone. While they acknowledge that the court may not have been required to hear live testimony on the issue, plaintiffs argue the court was obligated to receive some evidence beyond the pleadings and to make findings of fact based on submissions by the parties before rejecting their assertion that the Franchise Agreement was unconscionable.

3

Finally, plaintiffs contend that the court's dismissal of their overpricing RICO claim is based on a misunderstanding of their theory of liability. Plaintiffs argue that their claim was not based on Quiznos' failure to disclose the fact that it was entitled to receive payments from the suppliers of the goods and services they were required to purchase in order to operate their franchises, or the amount of the payments they would receive. Instead, plaintiffs now argue, the fraud consisted of Quiznos statement in the UFOC that "[w]e and our affiliates negotiate purchase agreements with supplier *for the benefit of Franchisees*." (Dkt. 118, Pl.'s Br. Supp. Mot. to Alter or Amend J. 11 (quoting Compl. ¶ 72.)) Plaintiffs argue that the fraud consists of Quiznos having falsely promised that it would negotiate agreements with suppliers for their benefit when in fact it intended to use the agreements to extract exorbitant payments from them to their detriment. Plaintiffs contend that each of these grounds, considered individually or together, warrants relief under Rule 59(e) and that the court should vacate its previous judgment and grant them leave to file an amended complaint.

**ANALYSIS**

**1. Rule 59(e) Standard**

"A court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996). The purpose of a Rule 59(e) motion is to enable a district court to correct its own errors and thus avoid unnecessary appellate procedures. *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999). A Rule 59(e) motion "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263 (7th Cir. 1995). Nor should

4

such a motion be used to present evidence that was available earlier or attempt to correct a party's own procedural errors. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 730 (7th Cir. 1999). Instead, the only grounds for a Rule 59(e) motion are newly discovered evidence, an intervening change in the controlling law, or a "manifest error of law" by the court. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). With these principles in mind, I turn to the specific grounds plaintiffs have asserted.

**2. Newly Discovered Evidence**

Plaintiffs contend that reconsideration is warranted because they have recently discovered that Quiznos had a corporate policy of instructing its Area Directors to tell franchisees to write the word "None" in the space on the Acknowledgment form where they were to list the representations upon which they were relying other than those contained in the UFOC. Plaintiffs claim they only discovered this Quiznos policy on the same day the court issued its decision dismissing their claims when Quiznos provided the documents describing this policy in response to a discovery demand in another case. These documents, plaintiffs argue, "make clear that Quiznos not only duped its prospective franchisees into signing; it duped the Court into concluding that the process through which the defendants obtained the franchise agreements was worthy of respect." (Pl.'s Br. Supp. 9.) Plaintiffs contend that the new evidence undermines the viability of the non-reliance clauses that formed the basis of the court's dismissal of the fraud claims and thus requires reconsideration.

But as Quiznos observes, the evidence plaintiffs now seek to offer is neither newly discovered, nor fatal to the court's analysis of plaintiffs' claims of fraud. The evidence is not new because plaintiffs clearly were aware of the practice before they filed their lawsuit. Each individual plaintiff, after all, was instructed to write the word "none" on the form. Even though they may not

5

have known that a written policy setting forth the policy existed until after the court's decision, they certainly knew of the practice. "[M]otions under Rule 59(e) cannot be used to present evidence that could have been presented before judgment was entered." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008).

More importantly, the fact that Quiznos had such a policy does not undermine my original analysis. What the instructions and/or policy make clear is that Quiznos was unwilling to assume liability for any representations made by anyone on its behalf beyond those set forth in the UFOC. The UFOC and Franchise Agreement made this clear, and the Acknowledgment form emphasized it even more by requiring the prospective franchisee to complete and sign the form indicating that they understood as much. Non-reliance clauses are not unusual in commercial or investment contracts and reflect a desire on the part of one party to avoid charges of misrepresentation or fraud based on allegations of oral representations that are difficult to refute. They also put the other party on notice that the other party refuses to be bound by any oral representations not included in the contract documents. The fact that plaintiffs actually wrote the word "none" in the space provided for them to list the information not in the UFOC upon which they were relying does not strengthen their argument. It means that they had the opportunity to actually consider whether any other information was material to their decision.

Based on the foregoing, I do not find that plaintiffs' evidence of Quiznos' policy to have its Area Directors instruct prospective franchisees to write the word "none" on the Acknowledgment form in the space provided for them to list additional information on which they were relying constitutes newly discovered evidence within the meaning of Rule 59(e). To warrant reopening a case, newly discovered evidence must not only be new; it must also be material. This means that the

6

evidence is not merely cumulative, but is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999). Assuming the court's original analysis was correct, a question I will address in detail below, plaintiffs' new evidence does not meet this test.

**3. Unconscionability**

Plaintiffs next claim that the court misapplied clear Wisconsin law by resolving the unconscionability issue without sufficient record evidence to support the conclusion. (Pl.'s Br. Supp. 3.) They acknowledge that in *Wisconsin Auto Title Loans v. Jones*, 2006 WI 53, 290 Wis. 2d 514, 714 N.W.2d 155, the Wisconsin Supreme Court held that "[a]lthough an evidentiary hearing is ordinarily required as a basis for the necessary findings of fact, an evidentiary hearing may not always be necessary to support a determination of unconscionability." *Id.* at ¶ 40. But Jones held, they argue, that even if an evidentiary hearing is not required, the court must have some evidentiary basis for rejecting a claim of procedural unconscionability.

> Facts may, under certain circumstances, be determined without an evidentiary hearing. For example, facts may be deemed agreed upon when they are not denied by answer. Parties may stipulate to the facts. A court may take judicial notice of certain facts. A circuit court may make reasonable inferences from the facts of record. Thus, an evidentiary hearing is not required so long as the record contains facts of record and reasonable inferences therefrom sufficient to support a circuit court's findings of fact from which a court may reach a decision about procedural unconscionability.

*Id.* at ¶ 41 (footnotes omitted). By rejecting their assertion that the Franchise Agreement was unconscionable based only on the pleadings and without holding an evidentiary hearing, plaintiffs claim that the court manifestly erred. (Pl.'s Br. Supp. 5-6.)

7

Of course, federal courts, even in diversity cases, which this is not, are not bound by state procedural rules. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005) ("As a federal court sitting in diversity by virtue of jurisdiction pursuant to 28 U.S.C. § 1332, we apply state law to resolve substantive questions and federal law to resolve procedural and evidentiary issues."). Thus, to the extent *Jones* is declaring a procedural rule, it does not control here. But plaintiffs are also mistaken on a more fundamental level in the underlying premise to their argument.

While the court found strong indications that the claim of procedural unconscionability was doubtful in light of the allegations of the complaint and the documents referred to therein (which were attached to the motion to dismiss), a careful reading of the decision reveals that the court made no finding as to whether the Agreement itself was, in whole or in part, unconscionable. Instead, the court concluded that "plaintiffs' assertion that certain provisions of the contract they signed are unconscionable does not preclude consideration of Quiznos' contractual defenses, at least those that clearly apply and do not even arguably offend public policy." (Mem. at 17.) Thus, the court did not even address those aspects of Quiznos' motion that were based on provisions of the Franchise Agreement that plaintiffs claimed were unconscionable. No ruling was entered concerning the validity of the provisions prohibiting suits against Quiznos' corporate officers, agents and affiliates; requiring that any and all claims be brought within one year of the date on which the plaintiff knew or should have known of it; precluding claims for punitive damages; waiving the right to a jury trial; prohibiting class actions or consolidated actions; or mandating Colorado as the forum. (See Dkt. 57, Pl.'s Br. Opp. Mot. Dismiss 8.)

In truth, no provision of the challenged contract was enforced. The court simply considered the plaintiffs' claims of fraud in light of the disclaimers and non-reliance clauses that set forth the

8

understanding of the parties as to what they could reasonably rely on in entering the agreement. As the court noted at the time, "[n]othing in *Jones* or any of the cases cited by plaintiffs offer any support for their contention that I should ignore the clear and unequivocal disclaimers, disclosures and non-reliance clauses set forth in the UFOC they received and the Franchise Agreement they signed." (Mem. at 20.) In light of those disclaimers and non-reliance clauses, and based upon the cited cases, the court concluded that plaintiffs' claims of fraud could not stand. The court's error was not in rejecting plaintiffs' claim that the Franchise Agreements were unconscionable, since no such rejection occurred.

**4. Misunderstood Theory of Liability**

Lastly, plaintiffs argue that the court based its dismissal of their "overpricing" RICO claim on a misunderstanding of their theory of liability. (Pl.'s Br. Supp. 11.) Plaintiffs contend that the court rejected their claim that Quiznos fraudulently overcharged them for essential goods and services "because: (1) Quiznos did disclose in the UFOC and the franchise agreements that it might receive payments from suppliers; and (2) it would be impossible for Quiznos to disclose the prices of those goods and services in advance, and in any event Quiznos advised that it was not disclosing actual costs." (Id.) But that was not their theory. Instead, plaintiffs contend, their theory of fraud is that Quiznos' "practices of knowingly overcharging franchises and requiring kickbacks from approved vendors are directly contrary to Quiznos' representations to franchisees made in its various UFOCs, which provide, for example, in 2003 and 2004, that '[w]e and our affiliates negotiate purchase agreements with suppliers ***for the benefit of Franchisees.***" (Pl.'s Br. Supp. 11 (quoting Compl. ¶ 72) (emphasis added)).

As Quiznos observes, "such a narrow claim is less than clear from the plaintiffs' imprecise

9

and conclusory Complaint totaling 56 pages and 191 paragraphs, especially considering the specific allegations of the RICO claims contain no reference to this UFOC provision." (Dkt. 122, Def.'s Br. Opp. Mot. to Alter or Amend J. 11.) The allegation that plaintiffs now claim forms the basis of their overpricing RICO claim against the defendants appears in a section of the complaint entitled "Quiznos' Policy of Extracting Unlawful Profits From Its Franchisees." (Compl. 21.) Other than by incorporation, no mention is made of the provision in the twenty paragraphs the comprise the specific allegations under the heading **"FIRST CLAIM FOR RELIEF: CIVIL RICO (18 U.S.C. § 1962(c)) (FRAUDULENT SCHEME TO SELL ESSENTIAL GOODS AT INFLATED PRICES)."** (Compl. ¶¶ 81-102.) Nor is there specific mention of it in the second RICO claim for fraudulent scheme to sell franchise agreements. (Compl. ¶¶ 103-142.) While plaintiffs cited this provision of the UFOC in the section of their brief in opposition to Quiznos' motion to dismiss addressing their breach of contract claim (Pl.'s Br. Opp. Mot. Dismiss 53), their only reference to it in connection with the RICO claims appeared in a footnote. (Id. at 25 n.13.)

Still, despite the fact that the provision that plaintiffs now argue forms the basis of their overpricing claim was given little prominence in their complaint and in their brief in opposition to the defendants' motion to dismiss, it is not as if the court ignored it. The court's decision sets out the section of the UFOC containing the very language on which plaintiffs' present argument relies. That section not only refers to negotiating purchase arrangements with the suppliers "for the benefit of Franchisees," but also reminds the prospective franchisees that Quiznos and its affiliates have the right to receive payments from the suppliers and that "[s]ome suppliers pay us and/or our affiliates fees for products purchased through these negotiated agreements, and willingness to pay us and/or our affiliates may be a condition of our approval." (Mem. at 11.) The Franchise Agreements warned

10

prospective franchisees of Quiznos' right to receive payments from suppliers as well. (Id. at 12.) Read in context and in light of these disclosures, I stated:

> If Quiznos in fact imposed additional charges on its franchisees or charged them a higher percentage for such items as advertising or promotional costs than it promised, it may be liable for breach of contract. But in the face of these disclosures, plaintiffs' claim that the defendants induced them to purchase their franchises by fraudulently concealing such information cannot stand. A party cannot reasonably rely on allegedly fraudulent statements directly contradicted by the terms of a subsequently executed contract.

(Id.) In other words, a promise to negotiate purchase arrangements "for the benefit of Franchisees" seemed too slender a reed on which the rest a RICO claim when at the same time franchisees were told that suppliers were required to pay Quiznos as a condition of selling to them. The term "benefit" seemed too imprecise.

The Wisconsin Supreme Court, like most courts, has recognized that in order to constitute fraud, a statement must rise above "mere commercial 'puffery.'" *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32 ¶ 41, 270 Wis. 2d 146, 171, 677 N.W.2d 233, 246. "Puffery," the Court noted, "has been defined as 'the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.'" *Id.* (*quoting State v. American TV*, 146 Wis. 2d 292, 301-02, 430 N.W.2d 709 (1988)). *See also Loula v. Snap-On Tools Corp.*, 175 Wis. 2d 50, 54, 498 N.W.2d 866 (Wis. Ct. App. 1993)(statement that a tool dealer would make as much money as a doctor or lawyer was an exaggeration, "the truth or falsity of which cannot be precisely determined," and "so vague and indefinite that it amounts to nothing more than mere puffery," nonactionable at common law as a misrepresentation.). The term "benefit," in this context, likewise seemed too vague and indefinite to support a claim of fraud, especially in light of the express disclosure that Quiznos was getting paid by the suppliers in return

11

for its franchisees being required to buy from them.

Upon reconsideration, however, I conclude that this determination must be left for trial, or at least a more complete development of the record. This follows in part from the broad definition of the phrase "scheme to defraud" that is used in the mail and wire fraud statutes. The Seventh Circuit has explained in the context of a civil RICO suit that "the mail and wire fraud statutes broadly apply to any scheme "where in order to get money or something else of monetizable value from someone you make a statement to him that you know to be false, or a half truth that you know to be misleading, expecting him to act upon it to your benefit and his detriment." *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343, 1346 (7th Cir. 1995). The mail and wire fraud statutes have been applied not only to false or fraudulent representations, but also to the omission or concealment of material information, even where no statute or regulation imposes a duty of disclosure. *Id.* at 1346-47; *see also United States. v. Morris*, 80 F.3d 1151, 1160-61 (7th Cir. 1996). But more importantly, it follows because I erred in concluding that the disclaimers and non-reliance clauses contained in Quiznos' contract documents fatally undermined the plaintiffs' allegations of misrepresentations and omissions upon which their civil RICO and fraud claims were based.

In reaching the conclusion that the contract language was dispositive as a matter of law, I had relied on cases such as *Hardees of Maumelle, Ark, Inc. v. Hardee's Food Sys., Inc.*, 31 F.3d 573, 576 (7th Cir. 1994), in which the Seventh Circuit quoted with approval the conclusion of the district court, faced with similar contract language, that "[i]t is simply unreasonable to continue to rely on representations after stating in writing that you are not so relying." I also cited *Rissman v. Rissman*, 213 F.3d 381, 383 (7th Cir. 2000), in which the Court joined two other circuits in holding that "non-reliance clauses in written stock-purchase agreements preclude any possibility of damages

12

under the federal securities laws for prior oral statements," and *Associates In Adolescent Psychiatry, S.C. v. Home Life Insuarance Co.*, 941 F.2d 561, 571 (7th Cir. 1991), where the Court stated "[d]ocuments that unambiguously cover a point control over remembered (or misremembered, or invented) oral statements." My reliance upon these cases to support the conclusion that plaintiffs' fraud claims failed as a matter of law was manifest error. Upon closer examination, none of them support that conclusion, and Wisconsin law is clearly to the contrary.

The statement quoted in *Hardees* was the district court's finding of fact made after a bench trial, not as a conclusion of law reached on a Rule 12(b)(6) motion to dismiss as was done here. 31 F.3d at 575-76. In affirming the district court's judgment, the Court of Appeals did not adopt a principle of law; it upheld a finding of fact: "the district court was entitled to weigh the evidence, and gave clear and substantial reasons for its conclusions that the plaintiffs did not actually rely on these representations." *Id.* at 576. If a non-reliance clause were sufficient to preclude a claim of fraud as a matter of law, there would have been no need to determine whether the evidence was sufficient to support the trial court's finding.

*Rissman* was decided on summary judgment and involved a stock purchase agreement, a fact the Court emphasized in its decision. The *Rissman* Court explained that federal securities law "does not permit a party to a stock transaction . . . to say, in effect, 'I lied when I told you I wasn't relying on your prior statements' and then to seek damages for their contents." 213 F.3d at 383. Judge Easterbrook expressed his concern that "[s]tock transactions would be impossibly uncertain if federal law precluded parties from agreeing to rely on the written word alone." *Id.* He observed that the non-reliance clause "ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of

13

fabrication." *Id.* at 384. This case, of course, was before me on a Rule 12(b)(6) motion to dismiss and did not involve securities transactions.

Finally, *Adolescent Psychiatry*, which was also a review of a district court's grant of summary judgment, involved an alleged representation that the Court characterized as "puffery" and, for that reason alone, unworthy of belief. 941 F.3d at 570 ("No prudent person would treat as gospel statements such as those Schwarz alleges were made to him. Statements that a certain investment will earn the "highest" rate of return are puffery."). The Court also noted that the statement was susceptible to easy verification. "The relation between the rates offered on the Flexible Annuity and those available on other investments can be checked by a quick look at the Wall Street Journal or the Chicago Tribune." *Id.* These facts, combined with the contract documents that unambiguously covered the point, led the Court to "agree with the district court that no jury could find that a reasonable investor would be misled by the statements [the doctor plaintiff] related, when the truth was under his nose in black and white (many times over)." *Id.* at 571. Here, by contrast, many of the alleged misrepresentations were specific and concrete.

I conclude from this more detailed consideration of the above cases that I erred in concluding that Quiznos' disclaimers and non-reliance clauses fatally undermined plaintiffs' civil RICO and fraud claims as a matter of law. In none of the above cases did the Seventh Circuit hold that the contract language precluded any possibility of a claim of fraud regardless of the facts alleged. Indeed, the fact that one of the cases went to trial and two were decided on summary judgment suggests that except perhaps in cases involving the sale of a security, i.e., *Rissman*, more than the contract language is needed to defeat a claim of fraud. The case law also suggests that the degree of sophistication of the plaintiffs should also be considered. See *Cerabio LLC v. Wright Medical Technology, Inc.*, 410

14

F.3d 981, 992 (7th Cir. 2005) (affirming grant of summary judgment on fraud in the inducement claim based on disclaimer of warranty and non-reliance clause where the contract was entered into between sophisticated commercial parties after extensive negotiations); *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 645 (7th Cir. 2002) ("Since reliance is an element of fraud, the clause, if upheld—and why should it not be upheld, at least when the contract is between sophisticated commercial enterprises—precludes a fraud suit, as the cases we have just cited make clear."). Here, while the complaint suggests that plaintiffs have a greater degree of sophistication than the average consumer, not even Quiznos' argues that this case involves a contract between sophisticated commercial enterprises. Add to these considerations the uncertainty in federal law as to the significance of the element of reliance to a civil RICO claim, *see Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 2007 (2006) ("[T]he mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim.") (Thomas, J., concurring in part and dissenting in part), and it is clear that my dismissal of plaintiffs' claims was at best premature. I therefore conclude that the disclaimers and non-reliance clauses are not dispositive of plaintiffs' civil RICO claims.

The conclusion I reach now that the disclaimer and non-reliance clauses do not preclude plaintiffs' fraud claims is even more clear with respect to plaintiffs' state law claim of fraud. "The Wisconsin Supreme Court has endorsed the position of the *Restatement (Second) of Contracts* that exculpatory clauses are unenforceable on public policy grounds where the alleged harm is caused intentionally or recklessly." *RepublicBank Dallas, N.A. v. First Wisconsin National Bank of Milwaukee*, 636 F. Supp. 1470, 1473 (E.D. Wis. 1986) (*citing Restatement (Second) of Contracts*

15

§ 195(1) (1979)). In *Anderson v. Tri-State Home Imp. Co.*, 268 Wis. 455, 67 N.W.2d 853 (1955), the Wisconsin Supreme Court adopted the statement of reasons offered by the Massachusetts Supreme Court as its own explanation for why the Restatement offered the better rule:

> "As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law."

*Id.* at 460 (*quoting Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551, 558 (1941)).

This is precisely what plainitffs allege happened to them here. They claim that through their intentional misrepresentations and omissions, the defendants fraudulently induced them to enter into agreements that allow Quiznos to compel them to purchase the services, goods and materials essential to their businesses at grossly inflated prices from which Quiznos directly or indirectly profits. Then, when they can no longer withstand the losses caused by Quiznos' exploitation and go out of business, plaintiffs allege that Quiznos obtains releases of any claims against it by threatening the franchisees with a lawsuit to enforce provisions of the Franchise Agreement that purport to render them liable for payment of royalties over the entire 15-year term of the Agreement.

16

The closures are then used to "facilitate the movement of a lengthy list of equally deceived franchisees awaiting store locations, into the same, now-vacant and bankrupt locations." (Compl. ¶ 4.) Though such a practice would seem counter to the interests of a franchisor whose own income is dependent upon the success of its franchisees, plaintiffs allege that Quiznos' actual motivation is not to establish stable and economically strong franchisees for the long term. Instead, plaintiffs allege, the defendants' real motivation is "to inflate Quiznos' profitability and make it more attractive to potential buyers and investors, toward the ultimate goal of allowing the Schadens and other Quiznos insiders to sell their ownership interest for billions of dollars." (Compl. ¶ 56.)

In light of these allegations, I conclude that it was manifest error to grant Quiznos' Rule 12(b)(6) motion to dismiss plaintiffs' civil RICO and fraud claims, and their Rule 59 (e) motion to alter judgment should by granted. Although Quiznos asserted other arguments in support of their motion to dismiss the original complaint, plaintiffs have now also filed a motion for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a). Even though Quiznos had not filed a responsive pleading, other defendants had, thereby necessitating leave of the court for an amended complaint to be filed. Leave is to be "freely give[n]," however, "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under the circumstances, it is clear that leave should be granted. Though the case has been pending more than a year, the principal defendants have yet to file a response and no discovery has occurred. Plaintiffs' motion for leave to file their amended complaint will therefore be granted. And since the amended complaint supersedes the original, it is unclear whether Quiznos' additional arguments in support of its motion to dismiss apply. I therefore decline to address them.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to amend or alter judgment pursuant to Rule 59(e) (Dkt. 112) is granted and the judgment previously entered in this matter is

17

hereby vacated. Plaintiffs' civil RICO and fraud claims are reinstated, but since plaintiffs have not challenged the dismissal of their anti-trust claims, that part of the court's original decision and order remains in effect.

**IT IS FURTHER ORDERED** that plaintiffs' motion to for leave to file an amended complaint pursuant to Rule 15(a) (Dkt. 120) is also granted, and the clerk is directed to note the filing of the amended complaint on the docket forthwith. Defendants shall file their responses within twenty days from the date of this order unless otherwise ordered by the court.

**IT IS FURTHER ORDERED** that plaintiffs' motion for oral argument is denied.

Dated this 16th day of April, 2008.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge